## MACK JOHNSON *v.* THE STATE.

1. ARREST. — Under the Code of this State, a peace officer is empowered to make an arrest without a warrant where a felony or a breach of the peace is committed in his presence or within his view, or when ordered verbally by a magistrate within whose presence or view such offences are committed, or when there is no time to procure a warrant, and the offender is about to escape. And these are the only cases wherein such authority exists, except when exercised for the prevention of offences, as prescribed in Paschal's Digest, arts. 2540 *et seq.* See the opinion *in extenso* on this subject.

2. ASSAULT WITH INTENT TO MURDER — AGGRAVATED ASSAULT. — An arrest was attempted by an unauthorized party, and in attempting to make it he was cut by the accused, who, in consequence, was convicted of an assault with intent to kill. *Held*, that the authority to arrest was a material question, and that such facts called for a charge on aggravated assault.

APPEAL from the District Court of Tarrant. Tried below before the Hon. J. A. CARROLL.

The facts are substantially stated in the opinion of the court.

*B. G. Johnson*, for the appellant.

*George McCormick*, Assistant Attorney-General, for the State.

ECTOR, P. J.   The defendant was convicted of an assault with intent to murder one John Whitt.

The facts in evidence, as shown by the record, are briefly these: John Whitt, the person upon whom the assault is charged to have been committed, was a night-watchman in the employment of merchants in the city of Fort Worth, Tarrant County.   About one o'clock on the night of the 13th, and in the early morning of February 14, 1878, he heard loud talking and swearing in front of the Mobile Restaurant, in the city of Fort Worth, and went to the place from whence it proceeded.   There he found one Charley Henry and one Billy Hines, boys employed at the restaurant, on the sidewalk.   They appeared to be drinking; had pistols in their hands, which they were preparing to shoot off.   Whitt attempted to arrest them.   They said they would not be arrested; and, to prevent arrest, presented their pistols at him, and retreated into the restaurant, threatening to shoot Whitt if he followed them. Whitt then left the restaurant, and went some three blocks, to where Dick Peters, a regular policeman, was sleeping; woke him up, and they returned together to make the arrests.

When they arrived at the restaurant, Mrs. Michaelis, the owner of the restaurant, ordered them away, saying she did not want any fuss in her house that night.   She testified that before policeman Peters arrived with Whitt, the boys, Henry and Hines, had gone to sleep in the loft over the kitchen; that her husband was away from home; that the

defendant was in her employ, and had been put in control of the house for the night by her. Peters, the policeman, went up in the loft of the kitchen, arrested Henry, and handed him down to Whitt, to be carried to the lock-up. Henry resisted, striking Whitt a severe blow, and a regular scuffle, or fight, ensued between them in the kitchen; the stove, the oil-can, and other things were upset. Whitt finally succeeded in dragging Henry into the front room, and choked him up against the wall, when he cried out for help. At this moment Johnson, the defendant, approached Whitt and told him to let Henry alone. Whitt pushed defendant off; defendant got a butcher-knife from behind the counter, returned, and with it cut Whitt in the back. Whitt then turned Henry loose and left the premises.

Mrs. Michaelis also testified that, during the difficulty, Peters struck her in the face, and Whitt in the back. Quite a crowd was attracted by the difficulty. Whitt testified that neither he nor Peters struck Mrs. Michaelis. He further testified that he had no regular authority as a policeman; that he was authorized by the sheriff of Tarrant County, and by the city marshal of Fort Worth, to make arrests.

We have given so much of the evidence for the purpose, mainly, of presenting our view on one of the questions raised in the record. Defendant maintains that various errors were committed during the trial by the District Court. Passing over the first and second, we will proceed at once to the third error assigned, viz.: "The court erred in his charge to the jury, as contained in section 5 of the general instructions of the court, which is as follows: 'A police officer has a right to enter a house for the purpose of arresting any person known by him to have violated the law. Any person who may resist such police officer in the lawful discharge of his duty is a wrong-doer; and if, in mak-

ing such resistance to such officer, he shall kill such officer, the offence is murder.' "

This charge is not sufficiently qualified, and is not, we think, a fair exposition of the law applicable to the facts proven in this case ; and was calculated to mislead the jury, to the prejudice of the defendant.   Neither Peters nor Whitt had any warrant for the arrest of Henry.   The charge is a departure from the statutory rules laid down by our Code of Criminal Procedure for the arrest of offenders without warrant.   The rules under which an arrest may be made by a peace officer, without warrant, are clearly and definitely defined.   A peace officer may arrest without a warrant when a felony or a breach of the peace is committed in his presence or within his view, or when verbally ordered by a magistrate, within whose view or within whose presence a felony or breach of the peace is committed ; or in case of felony, where there is no time to procure a warrant, and the offender is about to escape.   Pasc. Dig., arts. 2677, 2678, 2680.

These articles prescribe the only circumstances under which an arrest can be made by a peace officer without warrant, except when it is done for the prevention of offences as prescribed in articles 2540, 2544.   In every other case the officer must be armed with a warrant before he can lawfully lay his hands on a citizen to deprive him of his liberty.   No citizen of the State shall be deprived of his liberty except by due course of the law of the land.   Bill of Rights, sec. 19.   The law of the land only permits arrest to be made upon affidavit and warrant, except in those cases enumerated in the articles above cited.   Whitt, as appears from the evidence, was neither a deputy sheriff nor policeman, and had no legal authority, as a peace officer, to arrest offenders.   If any rules or ordinances have been adopted by the municipal authorities of the city of Fort

Worth authorizing the arrest, without warrant, of offenders guilty of a felony, there is no evidence showing this in the transcript. There is no portion of the charge that instructed the jury under what circumstances any person not a peace officer could arrest an offender.

It is a well-established rule of the common law that when persons have authority to make arrest, and are resisted and killed in the proper exercise of such authority, the homicide is murder in all who take part in such resistance; and, on the other hand, it is equally as well settled that when the arrest is illegal the offence is reduced to manslaughter. And the general doctrine is that whatever one may do for himself he may do for another. Fost. 270; Hale's P. C. 465; *Rafferty* v. *The People*, 69 Ill. 111; 18 Am. Rep. 601; 2 Bishop's Cr. Law, sec. 665.

We can perceive no reason why, under our Criminal Code, the legality or the illegality of the arrest was not a material question in determining the character of the homicide, had death resulted from the wound inflicted upon Whitt by defendant in this case. If the evidence shows that the defendant, Johnson, was in charge of the restaurant at the time of the arrest; that the arrest was illegal; and that the acts and conduct of Peters and Whitt towards the inmates of the house were such as were calculated to, and did, excite his passion beyond his control; and that, under the influence of such sudden passion, the defendant cut Whitt with the knife, then he is not guilty of an assault with intent to murder, but of an aggravated assault and battery. A charge clearly presenting this view of the law should have been given to the jury in this case.

The judgment of the lower court is reversed and the cause is remanded.

*Reversed and remanded.*